JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Stanley Collins, appeals from his conviction for theft following a jury trial in the Cuyahoga County Court of Common Pleas. For the reasons stated below, we affirm.
 {¶ 2} On January 13, 2005, Collins and a co-defendant, Richard Griffin, were both charged in a one-count indictment with theft in violation of R.C. 2913.02 with the value of the property being $500 or more but less than $5,000. The case proceeded to a jury trial, at the conclusion of which the jury returned a verdict finding Collins guilty of the theft offense as charged, a felony of the fifth degree. The court sentenced appellant to six months' imprisonment and ordered him to pay restitution in the amount of $190.
 {¶ 3} The incident in this case occurred on October 25, 2004, and involved the theft of two boxes of shoes that were being sent from the Kid's Footlocker store at Randall Park Mall to a Footlocker warehouse via the United Parcel Service ("UPS"). The shoes were being sent because they were defective.
 {¶ 4} Suzanne Russo and Rodney Konik were the drivers for UPS who were making deliveries and picking up shipments at the mall. Konik testified that he saw Collins in the loading area and did not see anyone else. After picking up the boxes from Footlocker, Konik took the boxes down to his truck and then went to help Russo unload a delivery. The two met at the top of an elevator; Russo was already finished. Upon returning to the UPS truck, they noticed the latch was up a little. When Konik opened the truck, he discovered the boxes were not there and found a pack of cigarettes. There were no other people in the garage.
 {¶ 5} Russo, knowing that nobody was in the elevator in which she had just come down, ran over to a set of stairs. She told Konik to stay and listen while she went up a set of steps. As Russo went up the steps, she heard scuffling. She opened a doorway into another stairwell and encountered Collins and Griffin running down the stairs. Russo knew the two men, who were both maintenance employees at the mall. Russo chased them, and the men continued to go through a theater that was next to the loading dock. Russo then decided to contact security and they called the police. Konik also saw the two men as they ran out of the doors in front of him.
 {¶ 6} Russo began looking for the boxes and suspected they were in a locked utility room. Someone came with a key and opened the room. The two boxes were in the utility room, covered by a garbage bag. They had not been opened. Russo testified that the mall manager or the head of maintenance gathered the approximately eight maintenance employees who were working that day. Russo identified "Stanley" and "Richard" (who are Collins and Griffin) as the persons she had chased. Police took them into custody. Russo and Konik then emptied the boxes and gave them to the police. The police also took the cigarette pack.
 {¶ 7} Scott Fuller, the maintenance supervisor at Randall Park Mall, testified that only maintenance personnel had keys to the utility room, and that the only maintenance personnel on duty were Collins, Fuller, and Jerry Jackson. Collins' co-defendant, Griffin, was a housekeeping employee; housekeeping employees do not have keys to the utility room. Fuller noted that the utility room was locked when he was called to open it. When Collins was apprehended, he had the key to the utility room in his possession.
 {¶ 8} Sharon Kaleal, an assistant manager at the Footlocker store, testified that they were usually able to place about twelve pairs of shoes in one box. She stated that the combined value of the two boxes, and the total loss to Footlocker, was around eleven hundred dollars. She determined the value by scanning the shoes through the register, which displays a price with the bar code. However, on cross-examination, Kaleal admitted that the shoes were defective shoes that could not have been sold at the sticker price. She stated that she did not know the value of shoes in their defective condition. However, Footlocker would be given a credit for the shoes from the manufacturer.
 {¶ 9} The trial court denied Collins' Crim.R. 29 motion for acquittal. The jury returned a verdict of guilty for the offense as charged and specifically found that the value of the merchandise was $500 or more but less than $5,000.
 {¶ 10} Collins filed this appeal, raising two assignments of error for our review that provide as follows:
 {¶ 11} "1. Defendant's conviction violated [the] United States Constitution, Fourteenth Amendment, because the state failed to prove beyond a reasonable doubt each element of the case."
 {¶ 12} "2. The lower court erred when it denied defendant's motion for acquittal pursuant to [Crim.R. 29]."
 {¶ 13} When an appellate court reviews a record upon a sufficiency challenge, "`the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v. Leonard, 104 Ohio St.3d 54, 67,2004-Ohio-6235, quoting State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 14} R.C. 2913.02, the theft statute, provides in relevant part that "no person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * without the consent of the owner or person authorized to give consent." If the value of the property stolen is five hundred dollars or more and is less than five thousand dollars, the theft is a felony of the fifth degree. R.C. 2913.02(B)(2). In determining the value of property involved in a theft, "when the property involved is personal property held for sale at wholesale or retail, the price at which the property was held for sale is prima-facie evidence of its value." R.C. 2913.61(E)(1).
 {¶ 15} Collins argues that the state was required to establish the value of the items stolen and that the testimony of Kaleal failed to provide certainty as to the value of the goods. Collins points to the testimony of Kaleal in which she first stated that the value of the shoes in the boxes was around $1,100, but then admitted on cross-examination that they were defective shoes and the value was really less than the sticker price. Kaleal could not say what the value of the shoes was in their defective condition.
 {¶ 16} In support of Collins' argument, Collins points to the case of State v. Cunningham (1990), 67 Ohio App.3d 366. InCunningham, the defendant had removed several items of clothing from a department store without paying for them. The items bore price tags totaling $334.91. Id. at 367. However, each item also bore a colored tag indicating the purchaser would be given an additional discount at the time of purchase, ranging from twenty to fifty percent. Id. Applying the minimum discount, the value of the clothing was determined to be their selling price of $267.93. Id. at 368. Therefore, the court found that the defendant could not properly be convicted of theft of property over the value of $300. Id.
 {¶ 17} We find that Cunningham is distinguishable from this case. In Cunningham, the value of the merchandise was only slightly greater than the $300 base amount for the charged offense and the items were tagged to reduce their price to an amount below the base amount. Here, the testimony at trial established that the sales or sticker price for the shoes was around $1,100, more than double the base amount of $500 for the charged offense. There was no evidence that the shoes were being sold at a lower price, as in Cunningham.
 {¶ 18} Moreover, the only evidence introduced as to the value of the shoes was Kaleal's testimony, and the defense did not offer any evidence of their actual diminished value. The defense, however, did cross-examine Kaleal as to the condition and value of the shoes. Although it was established that the shoes were being returned to the manufacturer because they were defective, the matter was properly submitted to the jury to weigh this evidence.
 {¶ 19} Indeed, issues involving the weight of the evidence are primarily for the determination of the trier of facts. In this case, evidence was submitted as to the value of the shoes. The jury was instructed to carefully weigh the evidence. After doing so, the jury reached a determination that the value of the shoes was greater than $500.
 {¶ 20} Upon our review of the entire record, viewing the evidence in a light most favorable to the prosecution, we conclude any rational trier of fact could have found the essential elements of the theft offense proved beyond a reasonable doubt.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., and Milligan, J.,* Concur.
* Sitting by assignment: Judge John R. Milligan, retired, of the Fifth District Court of Appeals.